**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
)
CENTER FOR BIOLOGICAL DIVERSITY       )
1212 Broadway, Suite 800                       )
Oakland, CA 94612                                 )
)
 and                                                        )
)
CENTER FOR ENVIRONMENTAL HEALTH )
2201 Broadway, Suite 302                       ) CIVIL FILE ACTION NO. _____
Oakland, CA 94612                                 )
)
        Plaintiffs,                                        )
)
v.                                                             )
)
SCOTT PRUITT,                                      )
)
in his official capacity as                          )
Administrator of the United States            )
Environmental Protection Agency,           )
1200 Pennsylvania Avenue, NW              )
Washington, D.C. 20460                         )
)
        Defendant.                                       )
_____)

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**INTRODUCTION**

1.      Ground-level ozone is the principle component of what people commonly refer to as

smog.  Ozone pollution can cause decreased lung function, increased respiratory symptoms,

emergency department visits, hospital admissions for respiratory causes, and even premature

mortality.  Those most at risk from ozone pollution are children; active people, *e.g.,* runners and

people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people.

2.      Ozone also damages vegetation, both native vegetation and commercial crops.  Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life sustaining services that ecosystems provide to people for free, such as clean air, clean water and carbon sequestration.

3.      To better protect the public from the damage caused by ozone pollution, the Administrator of the United States Environmental Protection Agency (EPA) promulgated revised ozone National Ambient Air Quality Standards (NAAQS) in 2008.  EPA then designate areas with ambient air monitors showing ozone above the NAAQS as "nonattainment" and assign these nonattainment areas a level of nonattainment and a date by which the area must attain the 2008 ozone NAAQS.

4.      The promulgation of revised ozone NAAQS creates various mandatory duties which EPA must perform in order to effectively implement the ozone NAAQS.

5.      For nonattainment areas which fail to attain the 2008 ozone NAAQS by their attainment date, EPA has a mandatory duty to find that the areas failed to attain the 2008 ozone NAAQS by their attainment date, thus "bumping up" the nonattainment to the next level of nonattainment.

6.      For the Metro-Philadelphia and Metro Washington D.C. marginal 2008 ozone NAAQS nonattainment areas, EPA is in violation of its mandatory duty to issue a final determination as to whether the areas have attained the 2008 ozone NAAQS by their attainment date and if not, to bump these areas up to moderate 2008 ozone NAAQS nonattainment areas.

7.      Accordingly, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR

2

ENVIRONMENTAL HEALTH bring this action against Defendant SCOTT PRUITT, in his official capacity as Environmental Protection Agency Administrator, to compel him to perform his mandatory duties with respect to the 2008 ozone NAAQS.

## JURISDICTION

8.      This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

9.      An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## NOTICE

10.     On February 14, 2017, Plaintiffs mailed to EPA by certified mail, return receipt requested, a written notice of intent to sue regarding the violations alleged in this Complaint. EPA received Plaintiffs' notice of intent to sue letter by no later than February 21, 2017.  More than sixty days have passed since EPA received this notice of intent to sue letter.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a present and actual controversy exists between the parties.

## VENUE

11.     A substantial part of the alleged events or omissions giving rise to Plaintiffs' claims

occurred in the District of Columbia.  In addition, Defendant EPA resides in this judicial district.

Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).


## PARTIES

12.     Plaintiff **CENTER FOR BIOLOGICAL DIVERSITY** is a non-profit 501(c)(3)

corporation incorporated in California.  The Center for Biological Diversity has approximately

52,000 members throughout the United States and the world.  The Center for Biological

Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity,

native species, ecosystems, public lands and waters, and public health through science, policy,

and environmental law.  Based on the understanding that the health and vigor of human societies

and the integrity and wildness of the natural environment are closely linked, the Center for

Biological Diversity is working to secure a future for animals and plants hovering on the brink of

extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

13.     The Center for Biological Diversity's members enjoy, on an ongoing basis, the

biological, scientific, research, educational, conservation, recreational, and aesthetic values of the

Metro-Philadelphia and Metro-Washington, D.C. 2008 ozone NAAQS marginal nonattainment

areas.  The Center for Biological Diversity's members and staff observe and study native species

and their habitat in the Metro-Philadelphia and Metro-Washington, D.C. 2008 ozone NAAQS

marginal nonattainment areas, and derive professional, scientific, educational, recreational,

aesthetic, inspirational, and other benefits from these activities and have an interest in preserving

4

the possibility of such activities in the future.  The Center for Biological Diversity and its members have participated in efforts to protect and preserve natural areas, including the habitat essential to the continued survival of native species, and to address threats to the continued existence of these species, including the threats posed by air pollution.  EPA's compliance with its mandatory duties would redress these injuries to the Center for Biological Diversity's members

14.     Plaintiff the **CENTER FOR ENVIRONMENTAL HEALTH** is an Oakland, California based non-profit organization that helps protect the public from toxic chemicals and promotes business products and practices that are safe for public health and the environment. The Center for Environmental Health works in pursuit of a world in which all people live, work, learn, and play in healthy environments.

15.     Plaintiffs' members live, work, recreate, travel and engage in other activities throughout the areas at issue in this complaint and will continue to do so on a regular basis.  Pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members as well as their ability to engage in and enjoy their other activities.  Plaintiffs' members are compelled to breathe air less pure than that mandated by the Clean Air Act because of EPA's violation of its mandatory duties.  Pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

16.     EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act.  The

failure of EPA to perform the mandatory duties also creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

17.     The above injuries will continue until the Court grants the relief requested herein.

18.     Defendant **SCOTT PRUITT** is sued in his official capacity as the Administrator of the United States Environmental Protection Agency.  In that role Administrator Pruitt has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## LEGAL BACKGROUND AND FACTS

19.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again."  H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S.Code Cong. & Admin. News 5356, 5356.  To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants, including ozone.  National Ambient Air Quality Standards establish maximum allowable concentrations in the air of these pollutants.

20.     Each National Ambient Air Quality Standard is supposed to be stringent enough to protect public health and welfare.  Effects on welfare include, but are not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility (*i.e.*, haze), climate, damage to property, economic impacts and effects on personal comfort and well-being.

21.     In 2008, EPA strengthened the primary and secondary ozone NAAQS from 0.08 to 0.075 parts per million.  73 Fed.Reg. 16,436 (Mar. 27, 2008).

22.     After EPA promulgates a National Ambient Air Quality Standard, the Clean Air Act

requires that EPA designate each area of the country as either a clean air area for that standard, which is known as "attainment" in Clean Air Act jargon, or a dirty air area, which is known as "nonattainment" in Clean Air Act jargon. See 42 U.S.C. § 7407(d).

23.     EPA designated the Metro-Philadelphia and Metro-Washington, D.C. areas as marginal nonattainment areas for the 2008 ozone NAAQS.

24.     The attainment date for areas designated as marginal nonattainment areas for the 2008 ozone NAAQS was originally July 20, 2015. 80 Fed. Reg. 51,992 (Aug. 27, 2015). However, for the Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE and Washington, DC-MD-VA nonattainment areas, EPA extended the attainment date to July 20, 2016. 81 Fed. Reg. 26,697, 26,700 – 26,701 (May 4, 2016).

25.     On April 18, 2017 EPA proposed to determine that the Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE marginal ozone nonattainment area has attained the 2008 ozone national ambient air quality standard (NAAQS) by the July 20, 2016 attainment date. 82 Fed. Reg. 18,268 (April 18, 2017). On April 25, 2017 EPA proposed to determine that the Washington, DC-MD-VA marginal ozone nonattainment area has attained the 2008 ozone national ambient air quality standard (NAAQS) by the July 20, 2016 attainment date. 82 Fed. Reg. 19,011 (April 25, 2017). As of the date of this filing EPA has not finalized these proposed rules. These proposed rules create no environmental benefit and have no legal impact.

## CLAIMS FOR RELIEF

### CLAIM ONE

#### (Failure to make Bump Up determination for Metro-Philadelphia )

26.    Plaintiffs incorporate by reference all paragraphs listed above.

27.    Pursuant to 42 U.S.C. §§ 7509(c)(1) & 7511(b)(2)(A), EPA has a nondiscretionary duty to make a final determination by no later than six months after the attainment date, that is January 20, 2017, whether the Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE 2008 ozone NAAQS marginal  nonattainment area attained the 2008 ozone NAAQS by its July 20, 2016 attainment date.

28.    EPA has failed to make such a final determination

29.    Furthermore, pursuant to 42 U.S.C. §§ 7509(c)(2) & 7511(b)(2)(B), EPA has a nondiscretionary duty to publish a final notice in the Federal Register no later than January 20, 2017 identifying whether the Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE marginal nonattainment areas attained the 2008 ozone NAAQS by its attainment date.

30.    EPA has failed to publish such a notice.

31.    Accordingly, EPA is violation of its mandatory duties under 42 U.S.C. §§ 7509(c)(1), 7511(b)(2)(A) and 42 U.S.C. §§ 7509(c)(2) & 7511(b)(2)(B), to determine whether the Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE marginal 2008 ozone NAAQS nonattainment area attained the 2008 ozone NAAQS by its attainment date and publish notice of such determination.

### CLAIM TWO

#### (Failure to make Bump Up determination for Metro-Washington D.C.)

32.    Plaintiffs incorporate by reference all paragraphs listed above.

8

33.   Pursuant to 42 U.S.C. §§ 7509(c)(1) & 7511(b)(2)(A), EPA has a nondiscretionary duty to determine by no later than six months after the attainment date, that is January 20, 2017, whether the Washington, DC-MD-VA 2008 ozone NAAQS marginal  nonattainment area attained the 2008 ozone NAAQS by its July 20, 2016 attainment date.

34.   EPA has failed to make such a final determination

35.   Furthermore, pursuant to 42 U.S.C. §§ 7509(c)(2) & 7511(b)(2)(B), EPA has a nondiscretionary duty to publish a final notice in the Federal Register no later than January 20, 2017 identifying whether the Washington, DC-MD-VA marginal nonattainment areas attained the 2008 ozone NAAQS by its attainment date.

36.   EPA has failed to publish such a notice.

37.   Accordingly, EPA is violation of its mandatory duties under 42 U.S.C. §§ 7509(c)(1), 7511(b)(2)(A) and 42 U.S.C. §§ 7509(c)(2) & 7511(b)(2)(B), to determine whether the Washington, DC-MD-VA marginal 2008 ozone NAAQS nonattainment area attained the 2008 ozone NAAQS by its attainment date and publish notice of such determination.


**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.   Declare that the Administrator is in violation of the Clean Air Act with regard to his failure to perform each mandatory duty listed above;

B.   Issue a mandatory injunction requiring the Administrator to perform his mandatory duties by certain dates;

C.   Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's

order;

D.      Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees;

       and

E.      Grant such further relief as the Court deems just and proper.


                                        Respectfully submitted,


                                        ___/s/ Robert Ukeiley_____
                                        Robert Ukeiley
                                        DDC Bar No. MD 14062
                                        Law Office of Robert Ukeiley
                                        255 Mountain Meadows Road
                                        Boulder, CO 80302
                                        (303) 442-4033
                                        rukeiley@igc.org

                                        Counsel for Plaintiffs Center for Biological
                                        Diversity and Center for Environmental Health

Dated: May 3, 2017